FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| M.H.<br><br>Plaintiff,<br><br>v.<br><br>Stockton University, Jessie Matsinger, Karen Matsinger, John Does (1-20)(Fictitious Individuals); A-Z OWNER CORPORATIONS (1-20)(Fictitious Corporations)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.:<br><br>_____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Plaintiff, M.H. by and through her attorneys, the Fuggi Law Firm, hereby files the following Complaint against Defendants as captioned above.

## PARTIES

1. Plaintiff M.H. is a female who at the time of the events complained of herein was a student at Stockton University.

2. At all material times Plaintiff was attending Stockton University and now maintains a residency in Hamilton, NJ 08690.

1

3. At the time of events complained of herein the Plaintiff was living off campus and had just completed her Sophomore year at Stockton University.

4. The Defendant Stockton University is located in Galloway Township in Atlantic County, New Jersey, and is a public undergraduate and graduate university of the arts, sciences and professional studies of the New Jersey state system of higher education.

5. At all material times, assailant Jesse Matsinger is/was a student of Stockton University. On at least one occasion the Defendants engaged in unlawful sexual contact with the plaintiff without her consent.

6. At all material times, the Title IX Coordinator of Stockton University was an agent and/or employee of Defendant Stockton University, acting or failing to act within the scope, course, and authority of her employment and her employer.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction

over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## APPLICABLE LAW AND POLICY

6. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681(a), states that No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance. . . .

7. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

8. 34 C.F.R. §106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

9. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

10. In Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher.

11. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and b) the harassment is so severe, pervasive, and objectively offensive that it can be said

4

to deprive the victims of access to the educational opportunities or benefits provided by the school. Davis, 526 U.S. at 1669-76.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1.

### STATEMENT OF FACTS

13. M.H. enrolled as a student at Stockton University in July of 2015, during the summer semester when she took an online class called "Go Global!"

14. Although she became a student in the summer semester, she did not receive any Title IX training until after the semester had ended.

15. Stockton University's policy states that a student will receive Title IX training during their first semester of classes. However M.H. received no such training.

16. M.H. met assailant Jesse Matsinger in October of 2015. M.H's roommate began dating someone who was a friend of Jesse's, and they all began socializing together.

17. M.H. had been invited to assailant Jesse Matsinger's mother's house, Karen Matsinger, in Cape May for parties and get-togethers. Assailant Jesse Matsinger knew of M.H.'s preexisting medical history because she had already been introduced to his

mother Karen Matsinger, the Stockton University Assistant Director of Counseling Services, for counseling on multiple occasions.

18. In fact, M.H. saw Karen Matsinger the next day after a suicide attempt. On Friday April 22, 2016 M.H. had survived a suicide attempt after an incident where she had sexual relations with a Stockton University Resident Assistant who had illegally provided her alcohol while she was underage to the point of incapacitation due to consuming both alcohol and cough syrup.

19. M.H. then sought out Karen Matsinger, who identified that M.H. had a drinking problem and required sobriety. With the help of counseling, M.H. was sober for a number of months following the suicide attempt.

20. During her recovery, in April 2016, M.H. was able to work for Stockton University as a student worker in the Athletic Training facility. She received online training as well as training in person.

21. All of the freshman at the in-person Athletic Training Facility program were dismissed after signing the attendance sheet, because Stockton University decided they didn't need to learn about Title IX because they already had student training during orientation.

22. This Title IX training was run directly by Edna L. Ortiz from the Office for Institutional Diversity and Equity under the Office of the President, Dr. Harvey Kesselman.

23. During her recover, the Plaintiff also became a member of Stockton University EMS as an EMT in Spring of 2016. Although she was EMS, M.H. received no additional Title IX training or Mental Health First Aid training as a member of Stockton EMS.

24. Stockton EMS was at the time advised by Joe Lizza.

25. At the time Stockton University EMS was transitioning to being overseen by Galloway Township EMS. Stockton EMS receives their medical direction from Cooper Hospital.

26. In 2017, M.H. would socialize with assailant Jesse Matsinger and his girlfriend Jennifer Newsome. Although assailant Jesse Matsinger was underage and the son of Karen Matsinger, the Stockton University Assistant Director of Counseling Services, he liked to drink, smoke marijuana, and play video games.

27. During the course of her schooling and education where M.H. had been exposed to the violent environment of sexual assault and a culture of rampant underage drinking at Stockton University, she had been raped in a separate incident in March 2017. After surviving that rape, upset and confused, M.H. texted Jesse Matsinger afterwards saying she had called the suicide hotline.

7

28. On June 6, 2017 assailant Jesse Matsinger invited M.H. to the house to "calm down and have drinks with us." M.H. assumed Jesse meant him and his other friends.

29. M.H. drove from Hamilton to Egg Harbor City to assailant Jesse Matsinger's sister's boyfriend's house.

30. After arriving at the house, a party was being held at assailant Jesse Matsinger's sister's boyfriend's house located at 544 North Cincinnati Ave, Egg Harbor, New Jersey.

31. While at the house, M.H. and a group inclusive of six (6) Stockton students drank alcohol and smoked marijuana while playing "Drunk Jenga".

32. After 2 students left, the other four went into the bedroom. Jesse and Najee played video games and Lori and M.H. laid on the bed with the dog.

33. M.H. fell asleep on the bed and momentarily woke up when Najee and Lori got up to go sleep in the living room. M.H. fell back to sleep and eventually woke up to assailant Jesse Matsinger asking to "cuddle", which she accepted.

34. Assailant Jesse Matsinger began grinding against M.H. while they were "spooning". M.H. turned around and began to kiss Jesse. He pushed her head towards his penis and she thenperformed oral sex on Jesse Matsinger.

35. M.H. sat up to kiss her assailant Jesse Matsinger when he began to kiss her neck and shoulder before violently biting her arm

unprovoked, resulting in significant pain and eventually bruising.

36. M.H. began to cry due to the pain of the bite and explained that because of the trauma of her March 2017 rape that assailant Jesse Matsinger knew about, and which she was receiving therapy from his mother, Karen Matsinger, she became overwhelmed and needed to stop.

37. M.H., exhausted and anxious, laid down to go to sleep and assailant Jesse Matsinger asked if there was anything he could do so that he could continue to engage with her sexually.

**38. M.H. responded by saying "No."**

39. Immediately assailant Jesse Matsinger, unwilling to take no for an answer, forcibly mounted M.H., who was lying on her stomach, without her consent. He then began to forcefully rub himself on M.H. and eventually raped her by penetrating her violently. Assailant Jesse Matsinger committed this sexual assault and forcible rape with the full knowledge of M.H.'s psychological state.

40. Due to the previous trauma, which assailant Jesse Matsinger was aware of because of her treatment by his mother Karen Matsinger, of being a previous victim of sexual assault and rape, M.H. found herself frozen and unable to speak or resist.

41. M.H., confused and disoriented, cannot recall if assailant Jesse Matsinger used a condom while sexually assaulting her. But she

does recall seeing a used condom in the morning on the windowsill.

42. M.H., afraid and anxious, waited until assailant Jesse Matsinger fell asleep before grabbing her things and leaving.

43. Immediately after leaving the room in rush, but still within the house, Plaintiff realized she had left her glasses in the bedroom. She had to go back and reenter the room quietly to retrieve them.

44. After the incident, M.H. was extremely distraught and didn't know what to do or think about the fact that her friend had violently bit, assaulted, sexually assaulted, and raped her.

45. M.H. told Jesse's girlfriend Jen Newsome what had happened, as well as M.H.'s boyfriend Cody Scott, and M.H.'s ex-boyfriend Ryan Pletcher.

46. While M.H. disclosed to her friend Jen on the afternoon of June 7th 2017, M.H received multiple calls and texts from Jesse asking her to contact him. M.H. did not respond to any calls or texts because she was still recovering from the assault and sexual assault.

47. M.H. immediately contacted Valerie Hayes, Chief Officer for Institutional Diversity and Equity at Stockton University. Ms. Hayes agreed to meet. M.H. specifically wrote to Ms. Hayes, requesting that Amy Jones not be involved in her investigation 1) because Ms. Jones was friends with the Matsinger family and

2) because she believed Ms. Jones would be prejudiced against her because of her involvement in the first investigation of M.H.'s first sexual assault. But this request was ignored by Ms. Hayes.

48. After this initial meeting with Hayes, Chief Officer for Institutional Diversity and Equity at Stockton University, M.H. directly set up a meeting with Stacey Rose who is the Assistant Director of the Office of student Rights and Responsibilities, Valerie Hayes and Dr. Maralyn Mason, the Director of the Educational Opportunity Fund at Stockton University to get a no-contact order against assailant Jesse Matsinger.

49. In violation of Title IX and Stockton's own policies, M.H. was supposed to have an advocate with her provided by Stockton University during every part of the process. However, no advocate was provided—forcing M.H. to handle the process by herself with no guidance or legal counsel.

50. M.H. was recommended by Valerie Hayes to go to the Stockton University Health Center for an evaluation following the sexual assault. Upon entering the Health Center and approaching the front desk, M.H. came to meet Teresa Barone who was working as the Office Manager. Ms. Barone upon hearing about M.H.'s sexual abuse voluntarily became M.H.'s advocate.

51. It should be noted that Ms. Barone was offered and accepted a position with the Office of Student Rights and Responsibilities,

who completes all the Title IX hearings working under the direct supervision of Amy Jones. Ms. Barone indicated to M.H. that her new position created a conflict with her acting as her advocate.

52. There does not seem to be an effective protocol in place at Stockton University for appointing an advocate and how the process should work, leaving students confused and isolated in navigating the Title IX hearing process.

53. M.H. didn't have any information about the advocate policy until she personally sought out Teresa Barone.

54. After making the complaint of assault/sexual assault and reporting it to Stockton University, assailant Jesse Matsinger was informed of the investigation against him.

55. In preparation of the investigation and hearing, M.H. continued to have counseling meetings with Alan Zellner and Maralyn Mason. However it appeared different notes were being taken by each, and when the notes were later consolidated it was not always in M.H.'s best interest. Yet, they expected her to sign off on **their notes.**

56. **On one occasion, M.H. stated specifically that Jesse was mixing a drink with oranges. Alan Zellner in one meeting suggested that this could be the Stella Artois beer Jesse confirmed he had been drinking. M.H. stated she didn't know that this brand of beer was commonly mixed with oranges and this was likely the drink Jesse in question that he was "mixing." However, none of this**

conversation was put into the record by Alan Zellner. Eventually the fact that M.H. allegedly said Jesse was "mixing" drinks instead of drinking beer was held against her during the hearing, as they tried to paint her as an unreliable resource. But we believe this was an important point in M.H.'s resuscitation of the facts and circumstances.

57. On October 8, 2017, M.H. had asked Amy Jones to clarify information that was wrongly portrayed to the investigators. For example, the investigators were provided incorrect information that M.H. stated that she left the house and returned to the house for her glasses. But in reality she only left the room and returned to the room for her glasses. This was again used to undermine M.H.'s credibility by Amy Jones. In the same email M.H. sent Amy Jones a picture from the day of the incident confirming what she was wearing, asking her to submit both things into evidence. This was never done.

58. Amy Jones denied both of these requests, saying M.H. would be able to clarify these things during the hearing herself. Although Amy Jones was supposed to be an advocate for M.H., it is clear that she had an ulterior motive. Ms. Jones was far more preoccupied with protecting her employer and Stockton University and her friend Karen Matsinger who was the mother of the assailant Jesse Matsinger.

59. On October 18, 2017, M.H. received an email stating "If there are additional witnesses, statements, evidence, or other materials you plan to present at the hearing please send these to me no later than October 23, 2017 so we provide the appropriate materials to all parties prior to the meeting".

60. M.H. was required to submit all necessary materials and evidence prior to the October, 23, 2017 deadline set for the Title IX hearing. Stockton University put prejudiced deadlines on M.H. while the assailant Jesse Matsinger, son of Karen Matsinger, the Stockton University Assistant Director of Counseling Services, the ability to submit evidence and material the day of the Title IX hearing, to the detriment of M.H.

61. M.H. did not have the opportunity to review or examine the evidence provided by the assailant Jesse Matsinger before the hearing. This clearly raises an Appearance of Impropriety due to Karen Matsinger's position at Stockton University and as the mother of assailant Jesse Matsinger.

62. This undermined the integrity of Title IX hearing which occurred on the morning of October 27, 2017.

63. The date given for M.H.'s hearing date was scheduled for the same day in which students were to register for classes. This hearing affected her education greatly because she was not able to register for classes that day, and was not able to take

14

classes that would have allowed me to graduate an entire semester earlier that she was intending to do.

64. This was a clear violation of M.H.'s Title IX rights of equal access to education.

65. Stockton University's own policy states that Title IX investigations will take no more than 60 days. However, M.H.'s investigation began July 3, 2017 and ended October 18, 2017, lasting 107 days. The case wasn't officially closed until December 14, 2017. This further exemplifies issues of impropriety because of assailant's Jesse Matsinger's mother Karen Matsinger's position as the Stockton University Assistant Director of Counseling Services.

66. Because Jesse Matsinger is the son of Karen Matsinger, M.H. was concerned that private information would be disclosed to unnecessary University personnel, so she requested they be made private. At the beginning of the Title IX investigation M.H. requested that her counseling files be closed so that only Nate Morell, Assistant Director of Counseling Services, had access to them. She was told that they contacted the company to do this.

67. M.H. was supposed to be accommodated for disability and counseling services. While Nate Morell agreed to have counseling sessions over the phone, the Learning Access Program for disability services and Dr. Norman Chazin the school psychiatrist refused to offer accommodations. The accommodation

M.H. requested was to meet in a different office because Karen Matsinger, Jesse's mother, works at Stockton University as an Assistant Director of Counseling Services and their appeared to be a conflict.

68. M.H. was told she had to go to the office where Karen Matsinger worked and that Jesse often frequented to receive medical treatment and disability services which clearly was a violation of her Title IX rights and undermined her treatment and therapy..

69. The Title IX decision of Stockton University rejected M.H.'s testimony as credible as it related to the vicious assault/sexual assault despite the preponderance of evidence offered.

70. A letter dated November 7, 2017 was sent electronically to M.H. by Amy Rozell, Director of Students Rights and Responsibilities at Stockton Univeristy that stated Mr. Matsinger was found:

    a. Violation 4 section A: Harm: NOT RESPONSIBLE

    b. Violation 4 section C: Sexual Misconduct: NOT RESPONSIBLE

    c. Violation 5 section E: Off Campus Behaviors: RESPONSIBLE.

71. Interestingly, in the email officially closing the case on December 14, 2017, the bottom of the letter reads "CC: L. Dutton, Director of the Women's Gender and Sexuality Center."

Laurie Dutton refused to be affiliated with M.H.'s case because she is a close family friend of Karen Matsinger, the Stockton University Assistant Director of Counseling Services, who even stated to M.H. in a private meeting that she couldn't assist M.H. in her case because she "watched Jesse grow up." This further undermined the integrity of the Title IX hearing and its results.

72. It should also be noted that Laurie Dutton, Director of Women's Gender and Sexuality Center, urged M.H. not to file a Title IX investigation after her first incident where an R.A. had sex with M.H. after she drank cough syrup and alcohol. The Stockton University R.A. provided her with the alcohol. Laurie Dutton told M.H. that she wouldn't win and would be better off telling the Office of Residential Life so they could suspend him from being an R.A. for giving an underage person alcohol but not addressing the sexual assault. It also wouldn't require Clery Act reporting.

73. In violation of the Clery Act, the email M.H. received regarding Matsinger's disciplinary action was blacked out so M.H. couldn't read it.

## COUNT ONE

### VIOLATION OF TITLE IX AS TO DEFENDANT STOCKTON UNIVERSITY (20 U.S.C. §1681, et seq.) (Retaliation by Withholding Protections Otherwise Conferred by Title IX)

1. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

2. Stockton University had reassured all members of the student body that they would protect and investigate any and all sexual attacks regardless of whether or not the matter was referred to law enforcement.

3. Once a victim of sexual abuse insists upon involving law enforcement for a criminal investigation, the University instead retaliates against victims by: declining to investigate their matter, failing report all instances of sexual abuse, or to otherwise failing to comply with their responsibilities as mandated by Title IX.

4. Stockton University has been continually on notice as a result of past incidents which have involved rape, sexual assault, and underage drinking. But Stockton has declined to intervene to prohibit this conduct for the benefit and safety of its student body. As such, the university was complicit in these actions.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWO

### VIOLATION OF TITLE IX AS TO STOCKON UNIVERSITY (20 U.S.C. §1681, et seq.) (The School's Deliberate Indifference to Alleged Sexual Harassment)

5. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

6. The sex-based harassment articulated in the Plaintiff's general allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

19

7. The Defendant University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) ("Title IX"), because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by a fellow student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the University's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

8. Defendant Stockton University and its officials had actual and constructive knowledge of the sexual assault and the resulting harassment of Plaintiff. This was created by Stockton's failure to investigate and discipline Plaintiff's attacker in a timely manner consistent with its own policy and federal and state law.

9. The Defendant Stockton University's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participating in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

10. Defendant Stockton University failed to take immediate, effective remedial steps to resolve the complaints of sexual

harassment and instead acted with deliberate indifference toward Plaintiff.

11. Defendant Stockton University persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

12. Defendant Stockton University engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated and fully reported.

13. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

14. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT THREE

### 1983 VIOLATION AS TO DEFENDANTS STOCKON UNIVERSITY, (42 U.S.C. §1983)

15. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

16. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

17. Defendants Stockton Employees were all state actors acting under the color of state law.

18. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate the sexual assault involving the R.A. and assailant Jesse Matsinger; failing to appropriately

discipline the R.A. and assailant Jesse Matsinger; failing to adequately train and supervise Stockton Employees; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by the R.A. and assailant Jesse Matsinger.

19. Stockton University has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Stockton University students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

20. On information and belief, the University has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other Stockton University students.

21. The University's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

22. Defendant Stockton University and Karen Matsinger are or were at the time of events complained of within, policymakers for the

purpose of implementing the University's unconstitutional policies or customs.

23. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FOUR

### LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND PROTECT STUDENTS FROM SEXUAL ASSAULT AS TO DEFENDANT STOCKTON UNIVERSITY (42 U.S.C. §1983)

24. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

25. Defendant Stockton Employees, were "state actors" working for Stockton University, a federally funded school system.

26. Defendant Stockton Employees acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

27. Defendant Stockton Employees failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

28. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

29. Defendant Stockton Employees should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

30. Defendant Stockton Employees each violated Plaintiff's right to equal access by:

a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f. Failing to notify both parties of the outcome of the complaint.

31. Defendant Stockton University violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

32. These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

33. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant Stockton University's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

27

## COUNT FIVE

### VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT (CLERY ACT)

34. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

35. The Clery Act, passed in November 1990, requires that higher education institutions whose students receive federal financial aid collect and report crime data to the U.S. Department of Education.

36. A 1992 amendment to the Clery Act established the Campus Sexual Assault Victims' Bill of Rights, requiring schools to provide certain basic rights to survivors of sexual assaults on campus, include:

   A. Giving the alleged victim and the alleged assailant equal opportunity to have others present in disciplinary proceedings and equal notification of the outcome of such proceedings;

   B. Notifying alleged victims of the availability of counseling services, and of their right to pursue remedies through local police;

   C. Notifying alleged victims that they have the option of changing classes and dormitory assignments in order to avoid their alleged assailants;

37. The Clery Act requires colleges and universities to do the following with regards to sexual assault reports: 1) Publish an Annual Security Report; 2) Disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities; 3) Issue timely warnings about Clery Act crimes which pose a serious or ongoing threat to students and employees; and 4) Devise an emergency response, notification, and testing policy.

38. Defendant Stockton University failed to disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities;

39. Defendant Stockton University failed to issue timely warnings about crimes such as those involving Pi Kappa Phi, which posed a serious and ongoing threat to students that Stockton University allowed to occur.

   WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; punitive damages; injunctive relief requiring Defendant University to take effective steps to

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT SIX

**VIOLATION OF REPORTING UNDER THE CLERY ACT 34 C.F.R. 668.46**

40. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

41. Under the Clery Act, Stockton University is a participant in Title IV, HEA programs and must prepare, publish, and distribute an Annual Security Report (ASR) by October 1 of each year.

42. Stockton University failed to fully and accurately provide information as it relations to a description of the institutions campus security policy and protocol pursuant to 34 C.F.R. 668.46 (b).

43. Stockton has filed to account and properly detail:

    a. A list of the title of each person or organization to whom students and employees should report criminal affairs for

the purpose of making timely warning reports and annual statistical timeline.

b.   A statement of policy and protocol concerning the monitoring and reporting through local police agencies of criminal activity in which students engage at off-campus locations of student organizations including student off-campus housing facilities.

c.   Notification to students that Stockton University will change a victim's academic and living situations after an alleged sex offense and options will be available for victims.

d.   Stockton University failed to properly report crime statistics of the occurrence of certain crimes on campus or off-campus buildings or private and public property i.e. Pi Kappa Phi fraternity house pursuant to 34 C.F.R. 668.46 (d)

e.   Stockton University failed to properly and completely compile and publish crimes inclusive of sex offenses (forcible and non-forcible), robbery, assaults, burglary, liquor law violations inclusive of underage drinking, and drug law violations.

f.   Stockton University failed to notify and provide current students, incoming students, and applicants for admission with accurate, complete, and timely information about crime and safety on campus in violation of 34 C.F.R. 668.46 (e).

31

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SEVEN

**STOCKTON UNIVERSITY'S VIOLATION OF COMPLIANCE WITH THE CLERY ACT INLCUDED VIOLATIONS OF THE HEA HIGHER EDUCATION ACT OF 1965**

44. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

45. Stockton University violated the terms and guidelines of the Clery Act, which included violations the HEA of Departments

regulations when it did not give an emergency notification to its students and employees after Stockton University officers learned of the allegations of sexual assault from 2014.

46. Stockton University lacked the administrative capability required to comply with the Clery Act and HEA regulations and failed to properly notify students and incoming students of the sexual assaults.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT EIGHT

**STOCKTON UNIVERSITY FAILED TO ISSUE AN EMERGENCY NOTIFICATION AFTER EACH PARTICULAR SEXUAL ASSAULT ONCE STOCKTON OFFICIALS LEARNED OF THE ALLEGED SEXUAL ABUSE ALLEGATIONS COMMITTED BY STOCKTON STUDENTS**

47. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

48. Stockton University failed to issue an emergency notification after it determined that Pi Kappa Phi was a danger to the Stockton University Student Body.

49. Pi Kappa Phi continued to fully function and recruit Stockton University Students after it became an unrecognized fraternity and maintained a significant and regular presence on the Stockton University campus.

50. Pi Kappa Phi held itself out as a Stockton University fraternity, with Stockton University students as its exclusive members who were granted full access to Stockton University facilities and campus.

51. Stockton University had significant evidence prior to 2010 that Pi Kappa Phi posed a danger to the campus community, student body, and incoming students and took no action against its student members.

52. Stockton University allowed its students to partake in fraternity conduct that was detrimental to the health, education, and welfare of the Stockton University student body.

53. Stockton University took minimal and unsuccessful efforts to warn the campus community about the potential risks posed by Pi Kappa Phi and its members and associates in violation of the Clery Act reporting provisions.

54. The emergency notification would have informed the campus community and student body as well as incoming students that there was and is a dangerous situation involving an immediate threat to the health, safety, and welfare of the Stockton University Student Body.

55. Stockton University has not provided a reasonable explanation for not issuing such a warning.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual

assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT NINE

**STOCKTON UNIVERSITY FAILED TO ADMINISTER PROGRAMS UNDER TITLE IV (HEA) PROGRAMS IN ACCORDANCE WITH STATUTORY AND REGULATORY PROVISIONS UNDER AUTHORITY OF TITLE IV OF THE (HEA) 34 C.F.R. 668.16.**

56. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

57. Stockton University violated the directives and statutory requisites of the statue by not:

   a. Employing an adequate number of qualified staff to administer the program with appropriate checks and balances pursuant to 34 C.F.R. 668.16 (c)(1).

   b. Stockton University failed to properly document and maintain proper records to support crime statistics in its ASR and did not match the crime statistics it submitted to the U.S. Report of Education.

   c. Stockton University failed to properly retain data it had submitted to the U.S. Report of Education for the years:

2015, 2016, 2017,and 2018. Stockton University failed to be in full compliance with reporting statute.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TEN

**STOCKTON UNIVERSITY FAILED TO PROVIDE THE STATUTORILY REQUIRED
ACCURATE AND COMPLETE WRITTEN DESCRIPTION OF LEGAL SANCTIONS
IMPOSED UNDER LOCAL, STATE AND FEDERAL LAW FOR THE UNLAWFUL
POSSESSION OF DISTRIBUTION OF ILLICIT DRUGS AND ALCOHOL TO
UNDERAGE MINORS FOR THE YEARS 2010 THROUGH 2018**

58. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

59. As a part of Stockton University's participation on the Title IV and HEA programs, Stockton University is required to provide detailed information to the student body as it relates to the distribution and/or consumption of illicit drugs and alcohol dispensed to minors on the campus as well as at off campus housing to protect the health, education, and welfare of the Stockton University Student Body.

60. Stockton University did not provide to the student body a written code or cohesive plan for ensuring compliance with the Clery Act.

61. Stockton University failed to have a cohesive policy concerning the monitoring and recording through local police agencies of criminal activity, illicit drug and/or underage alcohol consumption of it students at a known location of Pi Kappa Phi and other various locations on and off campus.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for

38

Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT ELEVEN**

**STOCKTON UNIVERSITY DID NOT PROPERLY CLASSIFY SEXUAL INCIDENTS FOR PURPOSES OF THE CLERY ACT AND DID NOT PROPERLY COMPILE AND DESCRIBE THE TRUE CRIME STATISTICS IN ORDER TO UNDER REPORT CLERY ACT CRIMES**

62. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

63. Stockton University failed to comply with the Clery Act and the Department of Education's regulations for institutions participating in Title IV (HEA) programs which must include in

its ASR statistics of certain reported crimes and arrest involving campus disciplinary referrals for alcohol and drug violations.

64. The statistics must be disclosed by location including on campus or on non-campus building or property, and on public property pursuant to C.F.R. 668.46(a) and 668.46(c)(1)-(c)(4).

65. Stockton University failed to comply with the required crime statistics using the definitions of crimes provided by the Department's regulations and the Federal Bureau of Investigations Uniform Crime Reporting (UCR). Additionally, Stockton University failed to comply with hate crime data collection guidelines and training guidelines for hate crime data collection pursuant to 34 C.F.R. 668.46(c)(7) and failed to include the violations of Pi Kappa Phi in its reporting.

66. Stockton University failed to properly publish and distribute the information on its website and provide accurate supporting data, which thereby makes the mandatory reporting of the Annual Security Report (ASR) inaccurate.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive

relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWELVE

### STOCKTON UNIVERSITY DID NOT COLLECT CRIME STATISTICS FROM ALL REQUIRED SOURCES AND FAILED TO INCLUDE THEM IN THE ASR STOCKTON UNIVERSITY PREPARED AND SUBMITTED

67. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

68. Under the Clery Act, institutions participating in the Title IV HEA programs must prepare, publish, and distribute an accurate ASR by October 1 of each year pursuant to 34 C.F.R. 668.1(e).

69. An institution must include in its statistics any crime reported to a CSA and the crime must be included in the statistics for the year in which it was reported to a CSA pursuant to C.F.R. 668.46(c)(2).

70. A CSA is any official of the institution who has significant responsibility for student and campus activities, including but not limited to student housing, student discipline, and campus judicial proceedings pursuant to C.F.R. 668.46(a).

71. The crime statistics Stockton University reported on its ASR reports do not match the crime statistics that actually occurred on Stockton University's campus including dormitories and other residential facilities in or on off-campus buildings or public property pursuant to 34 C.F.R. 668.46(a), 668.46(c)(1)-(c)(4).

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTEEN

### THE DRUG FREE SCHOOLS AND COMMUNITIES ACT AMENDMENT OF 1989 (DFSCA) AS REFLECTED IN 34 C.F.R. 86 MANDATES THE PUBLICATION OF ILLICIT DRUGS AND ALCOHOL PREVENTION PROGRAMS AND DISCLOSURE OF SANCTIONS FOR VIOLATIONS OF CODE OF CONDUCT

72. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

73. The DFSCA and the Department of Education require institutions of higher education to adopt and implement a drug and alcohol prevention program for its students which at a minimum includes the annual distribution in writing to each student and to advise each student when in taking one or more classes for any type of academic credit standard of conduct that clearly prohibits the unlawful possession and distribution of illicit drugs and alcohol by its students.

74. Congress intended for the Drug Free Schools and Communities Act Amendment of 1989 (DFSCA) to ensure that students had vital information about drug and alcohol prevention at the institution of Stockton University.

75. Stockton University failed to advise and give its present and incoming students vital information regarding drug and alcohol prevention at the institution.

76. Stockton University failed to advise the student body about drug and alcohol prevention that would have helped them to understand the standards and codes of conduct expected of them and fraternity organizations such as Pi Kappa Phi with regard to illicit drug and alcohol use and possible sanctions, suspensions, and expulsions that could be imposed for violations of its student code of conduct.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FOURTEEN

### SEXUAL ASSAULT/SEXUAL ABUSE

77. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

78. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on or about Stockton University's campus.

79. On at least one occasions, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

80. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff M.H. and thereby put her in imminent apprehension and fear for her well-being.

81. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

82. Plaintiff did not and could not consent to the acts, and any purported consent was secured through fraud, deception and undue influence, coercion and duress thereby rendering it void.

83. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

84. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished

45

enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

85. All defendants are responsible for sexual assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive

relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT FIFTEEN

### AGGRAVATED ASSAULT

86. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

87. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on Stockton University's campus.

88. On at least one occasion, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

89. Defendants attempted to cause serious bodily injury to plaintiff purposely, knowingly, or under circumstances manifesting an extreme indifference to the value of human life.

90. Defendants attempted to cause significant bodily injury to plaintiff knowingly, under circumstances manifesting extreme indifference to the value of human life, or recklessly to cause such significant bodily injury.

91. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

92. All defendants are responsible for aggravated assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be

caused great harm to plaintiff by allowing the aggravated assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT SIXTEEN

### SEXUAL BATTERY

93. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

94. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on Stockton University's campus.

95. On at least one occasion, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

96. During the relevant times alleged herein assailant Jesse Matsinger purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff, M.H. by an act of sexual contact or sexual penetration for sexual gratification by duress and force.

97. During the relevant times alleged herein assailant Jesse Matsinger purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexual contact, by an intentional touching, either directly or through clothing, of the plaintiff M.H.'s intimate parts for the purpose of sexually arousing or sexually gratifying the assailant Jesse Matsinger, by duress and force.

98. During the relevant times alleged herein assailant Jesse Matsinger purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by an act of sexual contact or sexual penetration between the plaintiff and assailant Jesse Matsinger, for sexual gratification by duress and force.

99. During the relevant times alleged herein assailant Jesse Matsinger purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexually contacting, battering, harassing, touching, penetrating plaintiff, M.H. for sexual gratification by duress and force.

100.    During the relevant times alleged herein, assailant Jesse Matsinger grabbed and groped the plaintiff for the purpose of sexually arousing or gratifying assailant Jesse Matsinger.

101. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

102. All defendants are responsible for sexual battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SEVENTEEN

### CIVIL BATTERY

103. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

104. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on Stockton University's campus.

105. On at least one occasion, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

106. Defendants caused actual harmful and offensive touching of Plaintiff with the intent to cause offensive touching of Plaintiff.

107. Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

108. Plaintiff did not consent and could not consent to the touching which was against her will. Any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

109. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

110. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished

enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

111. All defendants are responsible for Civil Battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive

54

relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT EIGHTEEN**

**FALSE IMPRISONMENT**

112. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

113. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on or about Stockton University's campus.

114. On at least one occasion, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

115. At all times relevant hereto, while assailant Jesse Matsinger perpetrated his sexual battery, sexual assault, battery and assault, of the plaintiff, the defendant knowingly restrained

Plaintiff unlawfully, interfering substantially with her liberty then sexually assaulted her.

116. The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

117. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

118. All defendants are responsible for false imprisonment of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be

caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT NINETEEN

### INVASION OF PRIVACY

119. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

120. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, §652B).

121. Plaintiff possessed a reasonable expectation of privacy while attending school at Stockton University.

122. Defendant Stockton University failed to provide reasonable accommodations for the Plaintiff M.H. she was a resident on campus.

123. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

124. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT TWENTY**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

125. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

126. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on Stockton University's campus.

127. On at least one occasion, assailant Jesse Matsinger engaged in unlawful sexual contact with the plaintiff without her consent.

128. assailant Jesse Matsinger by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of assailant Jesse Matsinger.

129. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

130. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would

result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

131. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

132. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

133. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted

carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-ONE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

134. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

62

135. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on Stockton University's campus.

136. assailant Jesse Matsinger by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of assailant Jesse Matsinger.

137. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

138. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

139. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

140. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus;

difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

141. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in

response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-TWO

### NEGLIGENT HIRING

142. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

143. Defendant Stockton University entrusted Defendants Stockton Employees who hired Defendants Stockton Employees and Resident Assistants.

144. Defendant Stockton University, as an employer, at the time of hiring employees, Defendant Stockton Employees, had reason to believe, or could have determined by reasonable investigation, that the employees were dangerous and/or ill-equipped to handle perform their duties and hired them anyway, which proximately

caused injury to M.H. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

145. Defendant Stockton University as an employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the Stockton Employees.

146. Defendants Stockton Employees allowed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

147. Defendant Stockton University and Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by assailant Jesse Matsinger.

148. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily

activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

67

## COUNT TWENTY-THREE

### NEGLIGENT SUPERVISION

149. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

150. Defendants Stockton University, Stockton University Employees, and Resident Assistants were hired and chosen by Defendant Stockton University to protect its student body.

151. Stockton University, Stockton Employees, and Stockton University Resident Assistants accepted the responsibility of protecting the student body from harm.

152. Stockton University, Stockton Employees, and Stockton University Resident Assistants, managers, training staff, and/or supervisors failed to properly monitor the defendant employees. Based on external factors and the entirety of the circumstances, a reasonable person would expect safer level of supervision and protection of its student body.

153. Plaintiff sustained injuries, which was a direct result of the failure to supervise and protect the student body.

154. Defendants Stockton University and Defendant Stockton Employees in their roles failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of Stockton employees and Stockton students to report sexual abuse and protect against it.

155. A reasonable employee could have prevented this incident coming and prevented it from happening and/or would have reported the sexual abuse once gaining knowledge of it.

156. If there was proper supervision, plaintiff would not have been sexually assaulted by assailant Jesse Matsinger.

157. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

158. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly

negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants Stockton Employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-FOUR

### NEGLIGENT RETENTION

159. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

160. At all times relevant, assailant Jesse Matsinger, is/was a student at Stockton University who was present on or about Stockton University's campus.

161. Defendant Stockton University, was aware of Stockton Employees and assailant Jesse Matsinger's dangerous propensities.

162. Defendant Stockton University, retained negligent Defendant Stockton employees after learning of their dangerous conduct and lack of ability to protect the Stockton student body.

163. Defendant Stockton University and Defendants Stockton Employees did not take appropriate action to prevent harm to student body and others, such as the plaintiff M.H.

164. As a result, Stockton University and Defendant Stockton Employees facilitated assailant Jesse Matsinger's predatory behavior.

165. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks;

anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

166. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employees after learning of assailant Jesse Matsinger's dangerous propensities.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT TWENTY-FIVE

### VICARIOUS LIABILITY

167. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

168. At all times relevant, Stockton University, Stockton Employees, and Stockton University Resident Assistants, were present on or about Stockton University's campus and allowed the underage drinking and sexual assaults to occur.

169. Defendant Stockton University, Defendants Stockton Employees as an employer, hired Stockton Employees to perform services in the affairs of Stockton University and who with respect to the physical conduct in the performance of the services is subject to Stockton University, Defendants Stockton Employees control or right to control.

170. Defendant Stockton University, Defendants Stockton Employees exercised control over the details of the work, by which the distinct business all Defendants were engaged in, holding them vicariously liable for the Defendant Employees' failure to protect the Stockton University student body.

171. Defendants Stockton University, Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff, M.H.

172. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

173. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining employees Defendant Stockton Employees is therefore vicariously liable for their actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-SIX

### RESPONDEAT SUPERIOR

174. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

175. At all relevant times, all defendant employees of Stockton University, were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

176. As a result, Stockton University, Defendants Stockton Employees facilitated, allowed, and arranged assailant Jesse Matsinger's predatory behavior.

177. Consequently, Stockton University is liable under the doctrine of respondeat superior for their tortious actions of its employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT TWENTY-SEVEN**

**RATIFICATION**

178. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

179. Defendants Stockton Employees were agents, directors, and employees of Stockton University.

180. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants Stockton Employees and Stockton University.

181. All acts or omissions alleged of assailant Jesse Matsinger were ratified by Stockton University. Stockton University had investigated or knew of the deviant acts of assailant Jesse Matsinger and Stockton University's, employees, managers, supervisors, executives, and directors were informed of the sexual assault of M.H. by assailant Jesse Matsinger. Stockton University refused to take any action to stop him.

182. Moreover, Stockton University's managers, supervisors, executives, and directors hid this information.

183. Despite knowledge of assailant Jesse Matsinger's sexual misconduct, no disciplinary action was taken to deter or prevent this type of misconduct that was known of occurring throughout the Stockton University campus.

184. As a result, Stockton University, Defendants Stockton Employees facilitated assailant Jesse Matsinger's behavior.

185. Stockton University, is thus responsible for assailant Jesse Matsinger's acts of assault, battery, sexual abuse, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and

mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT TWENTY-EIGHT**

**FAILURE TO WARN/MISREPRESENTATION**

186. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

187. Defendant Stockton University, failed to do their due diligence, which would have revealed the Stockton student body information about the dangers of underage drinking, drug usage, and sexual misconduct.

188. Defendant Stockton University, failed to take even minimal efforts to determine whether Matsinger was a threat to the student body and protect against it.

189. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will

suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

190. Stockton University after learning of assailant Jesse Matsinger's dangerous propensities and failing to warn the plaintiff is therefore vicariously liable for Matsinger's actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may

constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT TWENTY-NINE

#### GROSS NEGLIGENCE

191. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

192. Defendant Stockton University owed a heightened duty to M.H. to exercise reasonable care in providing of proper accommodations and bodily safety for M.H. on Stockton's campus.

193. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing assailant Jesse Matsinger, Defendant Stockton University had a heightened duty of care to M.H. because of the inherent risk and prior history of sexual assaults that was already made known to Stockton University.

194. Defendant Stockton University breached their legal duty to M.H. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

195. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to M.H.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT THIRTY**

**PUNITIVE DAMAGES**

196. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

197. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

198. The Defendants' conduct had a very serious likelihood that serious harm would arise.

199. The Defendants had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

200. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

201. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

202. Defendant Stockton University had no proper implementation of a functional sexual abuse policy to protect students in place at the time of abuse.

203. Even if Stockton University did have a token policy in place, it is clear based on the events of the case that it was not enforced or taught properly and supported with adequate training courses which is equal to not having a policy at all.

204. The lack of a policy is evident by the reported incidents to Stockton police of sexual assaults on and off campus to the Stockton campus with Stockton students.

205. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent physical injuries.

206. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue

to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

207. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining Stockton Employees who had learned of the dangerous propensities associated with the sexual assaults and failed to warn the plaintiff, and is therefore vicariously liable for assailant Jesse Matsinger actions against the plaintiff.

## COUNT THIRTY-ONE

### FICTITIOUS PARTIES

208. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

209. JANE AND JOHN DOES (1-20) (Fictitious Individuals) and ABC CORPORATIONS (A-Z) (Fictitious Entities); are fictitious names for persons or entities which have not yet been identified but whose identities will be supplemented when ascertained by the plaintiff.

210. Said defendants may have played a role in the harm suffered by plaintiff.

211. Plaintiffs hereby reserve their right to amend the Complaint as a result of pleading such fictitious parties.

212. John and Jane Does (1-20) and ABC Corporations (A-Z) are individuals who may have taken action or inaction that resulted in harm against the Plaintiff but as are yet unknown or not yet necessarily germane to the allegations alleged in the complaint.

213. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTY-TWO

### CIVIL CONSPIRACY OF STOCKTON EMPLOYEES, ITS MEMBERS AND ASSOCIATES, AND STOCKTON UNIVERSITY

214. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

215. Stockton Employees and its members and associates entered into an agreement with other members for the purpose of concealing the sexual assault of M.H. The Stockton Employees agreed to do so, thereby putting Plaintiff in severe physical and personal harm.

216. Defendant Stockton University Employees, Defendant Jesse Matsinger, Karen Matsinger and John Does 1 -20 took steps to further conspire to sexually assault M.H., and protect the Defendant Jesse Matsinger by concealing the allegations of sexual assault undermining the integrity of the Title IX hearing.

217. Defendants did in fact commit the above acts against Plaintiff.

218. In furtherance of said conspiracy with each other Defendants and John Does 1-20 committed these tortuous acts.

219. Above Defendants were acting in the course of their agency relationship as Stockton Employees when said tortuous acts were committed.

220. In furtherance of the authority given to them by Defendant Stockton University, the University employees used their position of power to suppress and under-report the sexual assault of M.H. by assailant Jesse Matsinger in direct violation of Federal statutory regulations.

221. Plaintiff suffered substantial harm because of the civil conspiracy by Defendant Stockton Employees, its members, and associates.

222. Defendants are directly and collectively liable for the aforementioned actions of the members/associates of Stockton Employees and Defendants are directly and vicariously liable for the aforesaid acts of its members and associates.

223. As a direct and proximate result of the Defendants' civil conspiracy the Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. §2000e-5(k), New Jersey Revised Statutes §10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.


FUGGI LAW FIRM, P.C.


ROBERT R. FUGGI, JR., ESQ.

DATE: 6/12/18

**JURY DEMAND**

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.



ROBERT R. FUGGI, JR., ESQ.

**DESIGNATION OF TRIAL COUNSEL**

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.



ROBERT R. FUGGI, JR., ESQ.

**PLAINTIFF'S DEMAND FOR DAMAGES**

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.



ROBERT R. FUGGI, JR., ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.



ROBERT R. FUGGI, JR., ESQ.

### DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate. Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.



ROBERT R. FUGGI, JR., ESQ.

## NOTICE TO PRODUCE

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.

2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.

3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.

4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.

6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.

7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.

9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.

10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously
    answered by you in this action. All depositions noticed by
    you or taken of you.

                              FUGGI LAW FIRM, P.C.


                              _____
                              ROBERT R. FUGGI, JR., ESQ.